# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

SHANESIA S. JAUDON,

        Plaintiff,

    v.

ROBERT B. SASSER, for the Estate of Robert
C. Sasser, MIKE THOMAS, TIMOTHY
HOLLINGSWORTH, and MATTHEW J.
DOERING, in their individual and official
capacities; and GLYNN COUNTY,
GEORGIA,

        Defendants.

CIVIL ACTION NO.: 2:17-cv-118

## **O R D E R**

This lawsuit arises out of the search of Plaintiff Shanesia S. Jaudon's residence and her

subsequent arrest and prosecution. (Doc. 12.) Plaintiff alleges that Robert C. Sasser,[1] Mike

Thomas, and Timothy Hollingsworth, in their official and individual capacities, searched her home

without probable cause and later maliciously arrested and prosecuted her in violation of federal

and Georgia law. (Doc. 12, pp. 4–37.) Plaintiff also alleges that Matthew J. Doering,[2] in his

---

[1] On June 29, 2018, Defendants notified the Court of Defendant Sasser's death pursuant to Federal Rule of Civil Procedure 25. (Doc. 28.) The Court substituted Robert B. Sasser, the administrator of the estate of Robert C. Sasser, for the Party Defendant Robert C. Sasser. For the sake of clarity, however, any reference herein to "Defendant Sasser" or "Sasser" refers to originally-named Defendant Robert C. Sasser unless otherwise noted.

[2] On October 9, 2018, Defendants notified the Court of Defendant Doering's death pursuant to Rule 25. (Doc. 28.) Plaintiff filed a Motion to Substitute regarding Defendant Doering, (doc. 44), but that motion has since been withdrawn, (doc. 77; doc. 79), and no renewed motion has been made.

individual and official capacities, negligently failed to terminate Defendant Sasser's employment despite a pattern of unlawful behavior. (Id. at pp. 31–32.) Finally, Plaintiff contends Defendant Glynn County is liable for Doering's alleged inaction. (Id. at pp. 38–39.)

Presently before the Court is Defendants' Motion for Summary Judgment, (doc. 62). For the reasons set forth below, the Court finds that Plaintiff has failed to support any of her claims with enough evidence to survive summary judgment. Moreover, even if a genuine dispute of material fact existed as to the merits of Plaintiff's claims, Defendants would nonetheless be shielded by qualified, official, and/or sovereign immunity. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment, (doc. 62). The Court **DIRECTS** the Clerk of Court to enter the appropriate judgment of dismissal and to **CLOSE** this case.

## BACKGROUND

### I. Procedural History

Plaintiff filed this action on September 9, 2017, (doc. 1), and later filed an Amended Complaint, (doc. 12), alleging violations of her Fourth Amendment rights pursuant to 42 U.S.C. § 1983 and Georgia law. (Id.) Specifically, Plaintiff contends Defendant Sasser, an officer with the Glynn County Sheriff's Department, and Defendant Thomas, an officer with the Brunswick Police Department, lacked probable cause to search her home for Alton Brown—a non-party who was the subject of an active arrest warrant. (Id. at pp. 4–37.) Plaintiff alleges that, after the search, Sasser, Thomas, and Defendant Hollingsworth, another officer with the Glynn County Sheriff's Department, caused her arrest and prosecution based on feelings of ill-will. (Id.) Based on these allegations, Plaintiff asserts claims against Thomas, Sasser, and Hollingsworth for: effecting an

unconstitutional search in violation of the Fourth Amendment (Count XII);[3] false arrest in violation of the Fourth Amendment and Georgia law (Counts I, II); false imprisonment in violation of the Fourth Amendment and Georgia law (Counts III, IV); malicious arrest in violation of the Fourth Amendment and Georgia law (Counts V, VI); malicious prosecution in violation of the Fourth Amendment and Georgia law (Counts VII, VIII); and intentional infliction of emotional distress in violation of Georgia law (Count IX).[4]  (Doc. 12, pp. 4–37.)

Plaintiff further alleges that Defendant Doering was on notice that Sasser "had no problem violating other persons['] legal and constitutional rights" yet chose not to take remedial action, and that Defendant Glynn County endorsed Doering's decision. (Id. at pp. 31–32, 38–39.)  As such, Plaintiff contends that Doering and the County are liable for Sasser's actions (Counts X, XIII).[5]

---

[3] Counts XI and XII of Plaintiff's Amended Complaint are nearly identical; both claims rely on the Fourth Amendment to allege that Sasser and Thomas are liable for an unconstitutional search and that Sasser, Thomas, and Hollingsworth are liable for an unconstitutional seizure. (Doc. 12, pp. 33–37.)  However, Count XII cites Section 1983 as the ground for recovery while Count XI appears to be based directly on the Fourth Amendment. (Id.)  Section 1983, rather than the Constitution itself, "is the proper avenue for [a plaintiff] to seek remedies for alleged constitutional violations." Seacoast Sanitation Ltd., Inc. v. Broward County, 275 F. Supp. 2d 1370, 1375 (S.D. Fla. 2003); see Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010) (cause of action based on Fourth Amendment violation "may be asserted through [Section] 1983 as a claim for damages"); Azul-Pacifico, Inc. v. City of Los Angeles, 973 F.2d 704, 705 (9th Cir. 1992) (plaintiff had "no cause of action directly under the United States Constitution"). Accordingly, Count XI does not assert a viable ground for recovery, and the Court **GRANTS** Defendants' Motion on this claim.

[4] It is unclear from Plaintiff's Amended Complaint whether she intended to assert an intentional infliction of emotional distress claim pursuant to federal law in addition to her state law claim. (Doc. 12, pp. 29–30.) However, the Court is aware of no legal support for a Section 1983 intentional infliction of emotional distress cause of action; accordingly, the Court will presume Plaintiff did not intend to assert such a claim. See Lloyd v. Jones, No. 9:18-CV-211, 2019 WL 4786874, at *17 (E.D. Tex. Sept. 10, 2019), *report and recommendation adopted sub nom* Hopson-Lloyd v. Jones, 2019 WL 4747850, *1 (E.D. Tex. Sept. 27, 2019) (declining to address intentional infliction of emotional distress claim under federal law). Even if Plaintiff had asserted such a claim, Defendants would be entitled to summary judgment because, for the reasons explained below, Plaintiff's substantive Section 1983 claims cannot survive summary judgment.

[5] Plaintiff's Amended Complaint does not specify the legal grounds for these claims but does allege that the County and Defendant Doering are liable for depriving her of "rights protected by federal and state law." (Doc. 12, pp. 32, 39.)  Out of an abundance of caution, the Court assumes Plaintiff intended to rely on both federal and Georgia law; as explained herein, however, any such claim fails as a matter of law.

(Id.)  Plaintiff also asserts her intentional infliction of emotional distress claim against Doering (Count IX).  (Id. at p. 29.)  Finally, Plaintiff seeks attorney's fees pursuant to 42 U.S.C. § 1988 (Count XIV) and requests compensatory damages and punitive damages for each of her claims. (Id. at pp. 39–45.)

After an extended period of discovery, Defendants filed the at-issue Motion for Summary Judgment seeking dismissal of all of Plaintiff's claims.  (Doc. 62.)  Plaintiff then filed a Response, (doc. 71), and an Amended Response, (doc. 83), and Defendant filed a Reply, (doc. 76).

## II.    Factual Background

The events giving rise to this action took place during an eight-month period.   On September 27, 2015, several Glynn County and City of Brunswick police officers conducted a search at Plaintiff's home located 508 Mack Street in Brunswick, Georgia.  (Doc. 62-1, p. 5.)  Prior to the search, a car belonging to the subject of an arrest warrant, Alton Brown, was located across the street from Plaintiff's residence.  (Doc. 62-5, p. 2.)  The arrest warrant listed 508 Mack Street as Brown's address.  (Id. at p. 8.)  Based on this information, officers asked Plaintiff for her permission to conduct a search because they believed that Brown was hiding inside her residence. (Id. at pp. 5–9.)  Plaintiff declined to consent to the search, and the officers obtained a search warrant, ultimately locating Brown inside Plaintiff's bedroom.  (Id. at pp. 8–9.)  Plaintiff was subsequently arrested and indicted on criminal charges in connection with Brown's presence in her home.  (Doc. 83, p. 3.)  However, the criminal charges against Plaintiff were disposed of via entry of *nolle prosequi* in May 2016.  (Doc. 71-5.)  The relevant details from each of these events are described below.

### A.        Events Leading to the Search of 508 Mack Street

Plaintiff met Alton Brown approximately ten years ago.  (Doc. 64, p. 26.)  According to Plaintiff, she and Brown began to have relationship problems at some point in 2014.  (Id. at pp. 74–76.)  For example, on May 25, 2015, Plaintiff called the police when Brown tried to break into her residence at 508 Mack Street.  (Id. at pp. 74–76.)  Plaintiff told the responding officer, Officer Chapman, that she had instructed Brown "to leave several times but he [kept] returning to her residence."  (Id. at p. 76.)  According to Chapman's police report, Brown left the property before Chapman arrived but Plaintiff told Chapman that Brown was driving a "silver Nissan Altima with dark tinted windows and a Georgia wild life tag."  (Doc. 62-2, p. 8.)  Chapman located a car matching that description but did not find Brown.  (Id.)

About three months later, on August 26, 2015, Officers Melendez, Gibson, Browning, and Lowther responded to a domestic dispute at the home of a woman named Jessica Thomas.  (Id. at p. 3.)  Thomas claimed that Brown threatened to kill her and her family.  (Id.)  While the officers spoke to Thomas, Brown ran out of the residence, and Browning and Lowther pursued him.  (Id.)  However, Brown evaded capture.  (Id.)  Two days later, a Glynn County Magistrate Court Judge signed two arrest warrants for Brown prepared by Officer Williams—one for willful obstruction of law enforcement officers and another for terroristic threats and acts.  (Doc. 62-3, pp. 2–3.)  The warrants listed Brown's "home address" as "1610 Mlk [sic] Blvd," property that Brown owns.  (Id.; doc. 71-2, p. 2.)  On September 11, Thomas told Officer Kapellers that Brown called her over twenty times despite having been instructed not to contact her, and Officer Haney used this information to obtain a third arrest warrant for Brown on September 14.  (Doc. 62-2, pp. 4–5; doc. 62-4, p. 2.)  This warrant listed Brown's home address as 508 Mack Street—Plaintiff's residence.  (Doc. 62-4, p. 2.)

At some point before the morning of September 25, 2015, Defendant Sasser received information about Brown that ultimately led him to 508 Mack Street to locate Brown. (Doc. 62-8, pp. 2–3; see doc. 62-2, p. 3.) Sasser testified that he spoke with "a reliable confidential informant who told him that Brown was hiding out" at Plaintiff's house, and that a "concerned citizen" informed another officer that he saw Brown arrive at the residence. (Doc. 62-8, pp. 2–3.) According to Defendant Thomas, Sasser also represented that he was told Brown parked "his silver Nissan Altima at hotels near his ex-girlfriend's residence at 508 Mack Street and walk[ed] to the residence." (Doc. 65, pp. 20–21.) Sasser surveilled the area based on this information because part of his job "was to actively search for wanted fugitives in Glynn County," and Brown was classified as such. (Doc. 62-8, p. 2.) The surveillance revealed that Brown's car was indeed parked at "a hotel within walking distance of [Plaintiff's] residence," the Clarion Inn. (Id.; doc. 62-5, p. 2.) Sasser explained that this information led him to believe that Brown was at 508 Mack Street. (Doc. 62-8, p. 2.) Accordingly, he and at least one other officer went to Plaintiff's house around 8:30 a.m. on September 25. (Id.; doc. 62-2, p. 3; doc. 64, pp. 41–42.) After Plaintiff answered the door, the officers told her they were looking for Brown to execute a warrant for his arrest. (Doc. 62-9, pp. 2–3.) Plaintiff does not recall whether the officers explained why they thought Brown was inside her home. (Doc. 64, pp. 42–43.) Nevertheless, Plaintiff told the officers that Brown was not inside her house and that they could not search her home without a warrant. (Id. at p. 42; doc. 62-9, p. 3.)

The next day, September 26, Sasser contacted Defendant Thomas and his unit at the Brunswick Police Department and requested their assistance in serving an arrest warrant at 508 Mack Street. (Doc. 65, pp. 8–9.) Thomas remembers that "four or five" officers from his "group" responded and that a K9 city officer, Officer Condo, eventually joined them. (Id.) After Sasser

apprised the officers of the situation, Thomas saw the "silver car" across the street at the hotel and verified that it belonged to Brown. (Id. at pp. 15–16.) The officers went to Plaintiff's residence later that day and spoke to her about Brown's arrest warrants for the second time.[6] (Id. at pp. 52–53.) Plaintiff once again told the officers that Brown was not there and said they could only search the residence if they showed her a warrant. (Doc. 64, p. 44.) Thomas testified that as she spoke to the officers, Plaintiff "became very loud" and "boisterous," slammed and locked the front door, and walked away while she continued to yell—behavior he considered "evasive." (Id. at p. 53.)

At this point, most of the officers stepped back to set up a "perimeter," meaning they surrounded the property but did not approach the residence. (Doc. 65, pp. 17–18.) Plaintiff left her house with her children soon thereafter and her sister picked them up "down the road." (Doc. 64, pp. 49–51.) Meanwhile, Thomas left the area and went to the Glynn County Police Department to prepare a search warrant for 508 Mack Street. (Id. at pp. 11, 17.) To prepare the affidavit, Thomas spoke with Sasser on the phone and typed the information as it was relayed to him. (Id. at p. 11; doc. 62-5.) Thomas indicated that some information in the affidavit was not based on his own personal knowledge. For example, Thomas averred,

> Affiant states, Sgt. Sasser states that information given to Sgt. Sasser from a concerned citizen was that Mr. Brown will park his silver Nissan Altima at hotels hear his ex[-]girlfriends' [sic] residence at 508 Mack St. and walk to the residence. Affiant states, information given by the concerned citizen to Sgt. Sasser is that he frequents the residence in the same manner. Affiant states, Sgt. Sasser states, that this concerned citizen has [sic] truthful information in the past that has been corroborated by Law Enforcement and only asks to remain anonymous out of fear of retaliation.

(Doc. 62-5, pp. 2–3.) However, Thomas also included his firsthand knowledge, noting that: he saw Brown's car at the hotel; Plaintiff was "verbally upset;" Officer Palmer told Plaintiff of the

---

[6] Plaintiff stated that the officers came "sometime after 8:00 [p.m.]." (Doc. 64, p. 47.)

active warrant for Brown's arrest with her address; and Plaintiff left her house before an officer could show her the arrest warrant. (Id. at p. 3.) He stated that he believed the circumstances created probable cause to believe that Brown was inside 508 Mack Street. (Id.) Thomas then presented the finished documents to a Glynn County magistrate judge who signed the search warrant and supporting affidavit around 11:30 p.m. (Doc. 65, pp. 13–14; see doc. 62-5.)

Thomas and the other officers executed the search warrant shortly after midnight on September 27; upon entering Plaintiff's residence, they located Brown in a bedroom. (Doc. 65, p. 5; doc. 62-9, p. 5.) Because Plaintiff left prior to the search, an officer left a copy of the warrant on her coffee table. (Doc. 64, p. 55.)

### B.    Plaintiff's Arrests and Prosecution

On September 28, 2015, the day after the search, Sasser obtained four arrest warrants for Plaintiff—two warrants for hindering the apprehension of a criminal and two warrants for obstruction of an officer.[7] (Doc. 62-6, pp. 2–5.) Approximately one week later, Plaintiff received a phone call from "Sheriff Jump" asking her to go to the sheriff's department to discuss Brown's arrest. (Doc. 64, pp. 61–62.) When she arrived, another officer confronted Plaintiff and told her that there were warrants for *her* arrest. (Id. at pp. 63–64.) Plaintiff was arrested shortly thereafter and remained in custody until she posted bond "[a] few days" later. (Id. at p. 66; doc. 62-6, pp. 2–5.) In November 2015, a grand jury indicted Plaintiff on two counts of hindering apprehension of a criminal; two counts of obstruction; and two counts of making a false statement to a law

---

[7] Hindering apprehension or punishment of a criminal is codified at O.C.G.A. § 16-10-50 and willful obstructing or hindering law enforcement officers is codified at O.C.G.A. § 16-10-24(a).

enforcement officer.[8]  (Doc. 71-4.)  On November 23, a Glynn County Superior Court judge issued two bench warrants for Plaintiff's arrest based on the false statement indictments.  (Doc. 62-7.)

The bench warrants were executed on January 26, 2016.  (Id.)  That day, Sasser called for the police officers in the "zone unit" near Plaintiff's house "to meet him at the back of the church over by Mack Street."  (Doc. 63, pp. 26–30.)  Officer Hollingsworth was in that zone at the time and responded to Sasser's call.  (Id. at p. 28.)  Hollingsworth joined Thomas and Sasser at the meeting point.  (Id. at pp. 28–29.)  Sasser explained that he was going to execute warrants for Plaintiff's arrest and wanted a marked patrol unit—like Hollingsworth's vehicle—to be there.  (Id.)  After Sasser showed Hollingsworth the signed warrants, the three officers drove to 508 Mack Street where Hollingsworth knocked on the front door.  (Id. at pp. 29–30.)  When Plaintiff answered, Hollingsworth placed her under arrest and booked her at the Detention Center.  (Id.; doc. 62-9, p. 6.)  Plaintiff was later released on bond.  (Doc. 62-9, p. 6.)

In connection with her criminal case, Plaintiff filed a motion to suppress the evidence obtained from the September 27, 2015 search of her residence.  (Doc. 62-8.)  The Superior Court of Glynn County granted that motion, finding the affidavit prepared in support of the search warrant to be "legally insufficient."  (Id. at p. 4.)  Thus, the evidence from the search—the officers' discovery of Brown in Plaintiff's house—was not admissible in her criminal case.  The criminal charges against Plaintiff were later disposed of via entry of *nolle prosequi* in May 2016.  (Doc. 71-5.)

---

[8]  The code section regarding false statements is O.C.G.A. § 16-10-20.

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the non-

moving party only if there is a 'genuine' dispute as to those facts." <u>Scott v. Harris</u>, 550 U.S. 372,

380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact." <u>Id.</u> (emphasis and citations omitted).

## DISCUSSION

### I.   Federal Claims

Defendants move for summary judgment on all Plaintiff's federal claims, arguing they are

entitled to judgment on the merits or, in the alternative, entitled to qualified immunity.  (Doc. 62.)

For the reasons explained below, the Court agree.  In short, qualified immunity shields Defendants

from Plaintiff's Section 1983 unreasonable search and malicious prosecution claims while the

remainder of her claims fail as a matter of law.

### A.   Qualified Immunity Standard and Application

"Qualified immunity protects government officials performing discretionary functions

from suits in their individual capacities unless their conduct violates 'clearly established statutory

or constitutional rights of which a reasonable person would have known.'" <u>Dalrymple v. Reno</u>,

334 F.3d 991, 994 (11th Cir. 2003) (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002)).  The

doctrine "is intended to allow government officials to carry out their discretionary duties without

the fear of personal liability or harassing litigation, protecting from suit all but the plainly

incompetent or one who is knowingly violating the federal law." <u>Hoyt v. Cooks</u>, 672 F.3d 972,

977 (11th Cir. 2012) (quotations and citations omitted).  As a result, qualified immunity "liberates

government agents from the need to constantly err on the side of caution by protecting them both

from liability and the other burdens of litigation, including discovery." <u>Holmes v. Kucynda</u>, 321

F.3d 1069, 1077 (11th Cir. 2003) (internal quotation marks omitted).  But qualified immunity does

not protect an official who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982)) (internal quotation marks and alteration omitted).

To rely upon qualified immunity, a defendant first must show that he or she acted within his or her discretionary authority. Mobley v. Palm Beach Cty. Sheriff Dep't., 783 F.3d 1347, 1352 (11th Cir. 2015). Specifically, a defendant must show that he or she "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). Here, Plaintiff does not dispute that Thomas, Sasser, and Hollingsworth were acting within their discretionary authorities as police officers at all times relevant to this action. (Doc. 83, pp. 14–15.) Therefore, the officers may properly assert the defense of qualified immunity and the burden now shifts to Plaintiff to show that qualified immunity is not appropriate. See Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

The Court must grant qualified immunity unless the facts taken in the light most favorable to a plaintiff show: (1) that there was a violation of the Constitution; and (2) that the illegality of the defendant's actions was clearly established at the time of the incident. Hoyt, 672 F.3d at 977. The Court has discretion in deciding which of those two prongs to address first. Pearson v. Callahan, 555 U.S. 223, 236 (2009); see Morris v. Town of Lexington Ala., 748 F.3d 1316, 1322 (11th Cir. 2014) ("A qualified-immunity inquiry can begin with either prong; neither is antecedent to the other."). This flexibility allows the Court to determine which cases it can "rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question [of] whether the relevant facts make out a constitutional [violation] at all."

<u>Pearson</u>, 555 U.S. at 239; <u>see</u> <u>Militello v. Sheriff of the Broward Sheriff's Office</u>, 684 F. App'x 809, 812 (11th Cir. 2017) (per curiam) ("It is axiomatic that we have the sound discretion to determine which prong of qualified immunity should be analyzed first.").

Regardless of where a court begins its analysis, a plaintiff must demonstrate that the "contours of [a] right were clearly established" at the time of the alleged violation. <u>Terrell v. Smith</u>, 668 F.3d 1244, 1255 (11th Cir. 2012.)  This can be done in one of three ways.  First, the plaintiff may point to a case with indistinguishable material facts decided by the Supreme Court of the United States, the Eleventh Circuit Court of Appeals, or the highest court of the pertinent state, affirming the existence of the right and "provid[ing] clear notice of the violation." <u>Long v. Slaton</u>, 508 F.3d 576, 584 (11th Cir. 2007).  Second, a broad statement of principle from "a federal constitutional or statutory provision or earlier case law" can provide notice that certain conduct amounts to a constitutional violation where the principle "applie[s] with 'obvious clarity' to the circumstances, establishing clearly the unlawfulness of the Defendants' conduct." <u>Id.</u>  Finally, a plaintiff may show that the alleged conduct of the officials was "so egregious that a constitutional right was clearly violated, even in the total absence of case law." <u>Lewis v. City of West Palm Beach</u>, 561 F.3d 1288, 1292 (11th Cir. 2009).

### (1)    Section 1983: Fourth Amendment Search

As noted above, Plaintiff asserts that Defendants Thomas and Sasser violated her Fourth Amendment right to be free from unreasonable searches when they obtained and executed a search warrant without probable cause.[9] (Doc. 12, pp. 35–38.)  The Fourth Amendment provides, in

---

[9] In support of her argument that the search warrant and supporting affidavit lacked probable cause, Plaintiff relies heavily on the Superior Court's order granting her Motion to Suppress.  (<u>See</u> Doc. 83.)  While the rules of issue preclusion "apply to actions brought under [Section] 1983 and can give preclusive effect to judgments rendered in state criminal proceedings," the Court must look to "the state's law of collateral estoppel" to determine the doctrine's applicability.  <u>Farred v. Hicks</u>, 915 F.2d 1530, 1533 (11th Cir. 1990).

relevant part, that "[t]he right of the people to be secure in their persons [and] houses . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. Probable cause for a search warrant exists when a warrant application sets forth "reasonably trustworthy facts which, given the totality of the circumstances," could "lead a prudent person to believe" that contraband or evidence will be found in a particular place. See Kohler v. Englade, 470 F.3d 1104, 1109 (5th Cir. 2006) (citing Illinois v. Gates, 462 U.S. 213, 238–39 (1983)). This, however, "is not a high bar[; i]t requires [officers to show] only the 'kind of fair probability on which reasonable and prudent people, not legal technicians, [would] act.'" Kayley v. United States, 571 U.S. 320, 338 (2014) (quoting Florida v. Harris, 568 U.S. 237, 244 (2013); see also United States v. Jimenez, 224 F.3d 1243, 1247 (11th Cir. 2000) (finding supporting affidavit "show[ed] the required nexus—that there was a fair probability that contraband or evidence of a crime would be found.").

However, where, as here, the "alleged Fourth Amendment violation involves a search . . . pursuant to a warrant" and an officer asserts qualified immunity, the critical question is *not* whether the warrant lacked probable cause; rather, courts must discern whether the officer-defendants "are entitled to immunity from damages, even assuming that the warrant should not have been issued." Messerschmidt v. Millender. 565 U.S. 535, 546 (2012). This inquiry looks to the "objective

---

In Georgia, collateral estoppel "precludes readjudication of an issue already adjudicated between the parties . . . in a prior action." McGuire v. Witcher, 411 S.E.2d 875, 876 (Ga. Ct. App. 1991). However, "mutuality" must be present, meaning the two actions must be "between identical parties or their privies." Id. While was Plaintiff was undisputedly a party to her criminal proceeding, Defendants were not; "Georgia law does not recognize 'privity' between local police officers and the state of Georgia." Farred, 915 F.2d at 1534. Indeed, "Georgia does not generally allow the record in a criminal prosecution to act as a bar to a later civil action arising from the same transaction because the two actions are not between the same parties . . . ." McGuire, 411 S.E.2d at 876. As such, the Court takes judicial notice of the state court decision and relies on it where it is proper to do so but will conduct an independent probable cause inquiry.

reasonableness" of an officer's actions and asks whether "it is obvious no reasonably competent officer [in the defendant's position] would have concluded that a warrant should issue." Id. at 546 n.1. Under this standard, an officer will lose "[t]he 'shield of immunity' otherwise conferred by warrant" where a plaintiff can establish that "the warrant was 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[.]'" Id. at 547 (citations omitted).

In their Motion, Defendants argue that Thomas and Sasser's actions were objectively reasonable because the warrant and supporting affidavit were signed by a magistrate judge and contained information connecting the place to be searched—508 Mack Street—to the property to be seized—Brown. (Doc. 62, pp. 14–15.) The Court agrees. "[T]he fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner" and Plaintiff has not adduced facts or law to overcome this high threshold. Messerschmidt, 565 U.S. at 546.

First, the affidavit indicated that the officers were searching for the subject of an active arrest warrant—Brown—at the address listed on the arrest warrant—508 Mack Street. (Doc. 62-5, pp. 2–3.) It is undisputed that the arrest warrant was not prepared by either Thomas or Sasser, (doc. 62-4, p. 2), and Plaintiff has not pointed to any evidence showing that either officer should have doubted the arrest warrant's validity or the information contained therein. See, e.g., Daker v. Steube, 514 F. App'x 885, 888-89 (11th Cir. 2013) (officer had probable cause to execute warrant at address listed on arrest warrant where officer had other information tying suspect to the residence); Anderson v. Campbell, No. 95-6459, 1996 WL 731244 at *2–3 (10th Cir. 1996) (reported in table case format at 104 F.3d 367) (considering officer's reliance on address listed on valid arrest warrant as factor in reasonableness analysis).

Second, the affidavit said a "concerned citizen" told Sasser that Brown "frequents [Plaintiff's] residence" by parking his silver Nissan Altima at nearby hotels. (Doc. 62-5, pp. 2–3.) In her Amended Response, Plaintiff argues it was unreasonable for the officers to rely on this information because they did not conduct an independent investigation to ascertain its validity. (Doc. 83, p. 7.) However, the record refutes this assertion; as per the affidavit, Sasser called Thomas *after* seeing the car in the location described by the informant, and Thomas verified that the silver car belonged to Brown after seeing it in the location described by the informant. (Doc. 62-5, pp. 2–3; doc. 62-8, pp. 2.) While neither Thomas nor Sasser saw Brown enter Plaintiff's residence, the presence of a vehicle belonging to suspect is a factor that can "contribute[] to the reasonableness" of an officer's actions. See United States v. Magluta, 44 F.3d 1530, 1538 (11th Cir. 1995); United States v. Bellamy, 456 F. App'x 863, 865 (11th Cir. 2012) (finding that officers had a reasonable belief the suspect was inside his residence when a car that was connected to the suspect was located nearby at the time they entered the house to execute arrest warrant). Moreover, the affidavit stated that according to Sasser, the "concerned citizen" had provided truthful information in the past. (Doc. 62-5, pp. 2–3.) Plaintiff does not dispute this contention or offer any other evidence to that effect, nor does she offer any evidence showing that Thomas was unreasonable in relying on Sasser's representations. See United States v. Kirk, 781 F.2d 1498, 1505 (11th Cir. 1986) (noting that information received from "fellow officers of the Government engaged in a common investigation are plainly a reliable basis" to apply for a warrant."); United States v. Jackson, 548 F. Supp. 2d 1314, 1321 (M.D. Fla. 2008) ("[C]ollective knowledge of law enforcement officers involved in an investigation can be used to determine probable cause" even where some officers lack awareness of certain information).

Finally, the affidavit referenced Brown's criminal history and Thomas' observations of Plaintiff's behavior, both of which are relevant to the reasonableness inquiry. (Doc. 62-5, pp. 2–3.) Specifically, the affidavit noted Brown's history of obstructing law enforcement—the precise misconduct the officers were investigating—and "[t]he use of prior arrests and convictions can be helpful in establishing probable cause, especially where the previous arrest or conviction involves a crime of the same general nature as the one the warrant is seeking to uncover . . . ." See Kohler, 470 F.3d at 1111 (quoting Greenstreet v. County of San Bernardino, 41 F.3d 1306, 1309 (9th Cir. 1994)). Additionally, Thomas included his belief that Plaintiff was acting evasively, behavior which "may be a significant factor in a probable cause determination." Stansbury v. Wertman, 721 F.3d 84, 92 (2d Cir. 2013).

Based on the totality of the circumstances, the Court finds that Plaintiff fails to meet the high burden required to establish that "no reasonably competent officer" in Thomas or Sasser's positions "would have concluded that a warrant should issue." Messerschmidt, 565 U.S. at 546--47. Even assuming the officers could have provided *more* information in the warrant application, this is not a case in which the affidavit lacked a basis for the affiant's belief or any affirmative allegation that the affiant had personal knowledge of the facts therein. Cf. Garmon v. Lumpkin County, 878 F.2d 1406, 1408 (11th Cir. 1989) (officers were unreasonable where "[t]he affidavit contained no facts whatever."). Accordingly, Thomas and Sasser retain the "shield of immunity," and the Court **GRANTS** Defendants' Motion on this issue. See Messerschmidt, 565 U.S. at 546.

### (2)   Section 1983: Malicious Prosecution

Plaintiff also asserts a malicious prosecution claim under 42 U.S.C. § 1983, alleging that Defendants Sasser, Thomas, and Hollingsworth arrested her without probable cause to maliciously initiate and maintain her prosecution. (Doc. 12, pp. 24–27.) Malicious prosecution claims brought

pursuant to Section 1983 arise under the Fourth Amendment. <u>Uboh v. Reno</u>, 141 F.3d 1000, 1003–04 (11th Cir. 1998). To establish a viable claim under this theory, Plaintiff must prove: (1) the elements of the common law tort of malicious prosecution; and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures. <u>See</u> <u>Wood v. Kesler</u>, 323 F.3d 872, 881 (11th Cir. 2003). As to the first prong, a plaintiff must show he or she endured: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." <u>Id.</u> at 882. Additionally, a plaintiff must adduce evidence to prove "he was 'seized in . . . in violation of [his] constitutional rights.'" <u>Donley v. City of Morrow</u>, 601 F. App'x 805, 813 (11th Cir. 2015) (per curiam) (quoting <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1235 (11th Cir. 2004)). "[A]n arrest is a seizure of the person," and "the reasonableness of an arrest is . . . determined by the presence or absence of probable cause for the arrest[;]" it is well-established that "an officer who arrests an individual without probable cause violates the Fourth Amendment." <u>Skop v. City of Atlanta</u>, 485 F.3d 1130, 1137 (11th Cir. 2007) (internal citations and quotation marks omitted). Thus, "[t]he absence of probable cause is a necessary element" for both prongs of a malicious prosecution claim. <u>Brock v. City of Zephyrills</u>, 232 F. App'x 925, 928 (11th Cir. 2007) (per curiam). Said differently, "the existence of probable cause" for an arrest or arrest warrant "defeats a § 1983 malicious prosecution claim." <u>Grider v. City of Auburn</u>, 618 F.3d 1240, 1256 (11th Cir. 2010); <u>see also</u> <u>Black v. Wigington</u>, 811 F.3d 1259, 1267 (11th Cir. 2016) ("[A] police officer cannot be liable for malicious prosecution if the arrest warrant was supported by probable cause.") Probable cause is present where the "facts and circumstances within the collective knowledge of law enforcement officers . . . would cause a prudent person to believe that

the suspect has committed or is committing an offense." <u>Craig v. Singletary</u>, 127 F.3d 1030, 1042 (11th Cir. 1997).

In their Motion, Defendants argue that Plaintiff's malicious prosecution claim fails because her arrests—pursuant to "facially valid" arrest warrants—were supported by probable cause. (Doc. 62, p. 3, 31; doc. 76, pp. 11–12.) The Court agrees; the undisputed record shows that Thomas, Sasser, and Hollingsworth had probable cause to seek and/or execute arrest warrants for the crimes of hindering the apprehension of a criminal, obstruction of an officer, and making false statements. (<u>See</u> Doc. 62-6, pp. 2–5.) Under Georgia law, the relevant elements of "hindering the apprehension or punishment of a criminal" are: (1) intentionally harboring or concealing a person; (2) with knowledge or "reasonable grounds to believe [that the concealed person] has committed a felony." O.C.G.A. § 16-10-50(a)(1). On the offense of obstructing a law enforcement officer, Georgia law provides that "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." O.C.G.A. § 16-10-24(a). Finally, "a person may commit the crime of giving a false statement . . . by affirmatively making a false statement or representation." <u>Tesler v. State</u>, 672 S.E.2d 522, 526 (Ga. Ct. App. 2009) (citing O.C.G.A. § 16-10-20).

Here, Sasser and another officer went to 508 Mack Street on September 25, 2015 to execute an arrest warrant for Brown. (<u>See</u> Doc. 62-2, p. 3.) Plaintiff denied knowledge of Brown's whereabouts and declined to consent to a warrantless search of her residence. (Doc. 64, pp. 42–43; doc. 62-9, p. 3.) The next day, Sasser, Thomas, and several other officers returned to 508 Mack Street, and Plaintiff once again refused the officers' request to search her home and stated that Brown was not inside. (Doc. 65, pp. 8–9; doc. 64, p. 44.) However, the officers discovered Brown hiding inside Plaintiff's residence when they executed a search warrant later that same day.

(Doc. 65, p. 23; doc. 62-9, p. 5.)  Sasser then prepared arrest warrants and supporting affidavits for harboring a criminal and obstructing law enforcement based on his belief that Plaintiff knowingly concealed Brown to prevent his arrest.  (Doc. 62-6, pp. 2–5.)  A Glynn County magistrate judge signed the arrest warrants and Plaintiff was arrested shortly thereafter.  (Id.; doc. 64, p. 66.)  Eventually, a grand jury indicted Plaintiff on these charges as well as two additional charges for making false statements, and a judge issued two bench warrants for Plaintiff's arrest for the false statement charges.  (Doc. 71-4; doc. 62-7.)  Sasser, Thomas, and Hollingsworth ultimately arrested Plaintiff pursuant to these warrants.  (Doc. 63, pp. 26–30; doc. 62-9, p. 6.)

The Court finds that the foregoing undisputed facts and circumstances are sufficient to cause "a prudent person to believe" that Plaintiff committed the at-issue offenses.  See Craig, 127 F.3d at 1042.  Plaintiff had knowledge of the active arrest warrant for Brown and expressly denied his presence in her home and any knowledge of his whereabouts, yet Brown was discovered inside mere hours later.  (Doc. 64, pp. 42–44; doc. 62-9, p. 5.)  Even assuming Plaintiff was telling the truth and did not know that Brown was in her house, officers are "under no obligation to give any credence to a suspect's story nor should . . . the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause."  Williams v. City of Homestead, 206 F. App'x 886, 888-89 (11th Cir. 2006).  Indeed, "[p]robable cause issues are to be decided on an objective basis," and Plaintiff has not pointed to any evidence showing it was unreasonable for the officers to believe that she actively concealed Brown inside her home.  See Craig, 127 F.3d at 1042.  Accordingly, no reasonable juror could find Defendants Thomas, Sasser, and Hollingsworth

lacked probable cause to arrest Plaintiff, and her Section 1983 malicious prosecution claim fails as a matter of law. See Grider, 618 F.3d at 1256.[10]

However, even if Plaintiff had adduced facts amounting to a constitutional violation, the officers would be entitled to qualified immunity because Plaintiff has not shown that the alleged violation was clearly-established at the time of her arrests. Indeed, Plaintiff does not cite any controlling or materially similar case law and does not identify "a broad legal principle" indicating that a police officer who executes a facially valid arrest warrant with knowledge of facts tending to show that the subject of the warrant is guilty of the underlying offense violates the Constitution. See Griffin Indus. v. Irvin, 496 F.3d 1189, 1209 (11th Cir. 2007). The Court's own research has likewise revealed none. Finally, Plaintiff has not shown that the officers' conduct was "so egregious as to violate . . . the Fourth Amendment on its face." Vinyard v. Wilson, 311 F.3d 1340, 1351 (11th Cir. 2002). Thus, Plaintiff is unable to overcome Defendant Thomas, Sasser, and Hollingsworth's qualified immunity defense and they are insulated from liability for this claim. Accordingly, the Court **GRANTS** Defendants' Motion on this issue.

---

[10] In Count XII of her Amended Complaint, Plaintiff seemingly asserts a distinct Fourth Amendment violation for an unreasonable seizure based on her arrest warrants. (Doc. 12, p. 35.) However, "[t]he absence of probable cause is a necessary element" of this claim. Brock, 232 F. App'x at 928. As explained above, the arrests warrants were supported by probable cause because the officers found Brown inside Plaintiff's home. Moreover, the alleged illegality of the search that produced Brown does not affect this analysis because "the exclusionary rule does not apply in a civil suit against police officers." Black, 811 F.3d at 1268 ("Accordingly, the officers can rely on the evidence that they found in the [plaintiff's] trailer to prove that the arrest warrants were supported by probable cause.") Thus, to the extent Plaintiff intended to assert a distinct Fourth Amendment violation for an unreasonable seizure based on her arrest warrants, this claim fails as a matter of law and Defendants are entitled to judgment in their favor.

**B.    Section 1983: False Arrest**[11]

Defendants also move for summary judgment as to Plaintiff's Section 1983 false arrest claim.  (Doc. 62-1, pp. 19–20, 29.)  The Court agrees.  A Section 1983 cause of action for false arrest arises from "detention *without legal process.*"  Wallace v. Kato, 549 U.S. 384, 389 (2007) (alternation in original).  The issuance of an arrest warrant—even if allegedly invalid—constitutes legal process.  Carter v. Gore, 557 F. App'x 904, 906 (11th Cir. 2014) (per curiam); see also Black, 811 F.3d at 1267 ("Legal process includes an arrest warrant.").  Thus, where an arrest is made pursuant to a warrant, a cause of action for false arrest based on the arrest will not lie; rather, the tort of malicious prosecution is the exclusive remedy for a confinement pursuant to legal process.  See Wallace, 549 U.S. at 389–90; Carter, 557 F. App'x at 906 (district court properly dismissed claim for false arrest where plaintiff arrested pursuant to arrest warrant); Whiting v. Traylor, 85 F.3d 581, 585 (11th Cir. 1996) ("Obtaining an arrest warrant is one of the initial steps of a criminal prosecution.  Under these circumstances (that is, where seizures are pursuant to legal process) . . . the common law tort 'most closely analogous' to this situation is that of malicious prosecution.").

Here, it is undisputed that each of Plaintiff's arrests was pursuant to a warrant.  (Doc. 62-6, pp. 2–5; doc. 64, p. 66; doc. 62-9, p. 6.)  As such, Plaintiff's false arrest claim fails as a matter of law and the Court **GRANTS** Defendants' Motion on this issue.

---

[11] Plaintiff asserts a separate Section 1983 claim for malicious arrest.  (Doc. 12, p. 20.)  However, the Court's research yielded no legal authority recognizing a distinct cause of action for malicious arrest under federal law; rather, such claims are construed as or equated with claims for false arrest.  See Harris v. Ryant, No. CV 7:18-0716-TMC-KFM, 2018 WL 7825495, at *2 (D.S.C. May 3, 2018), report and recommendation adopted, No. 7:18-CV-0716-TMC, 2019 WL 926419 (D.S.C. Feb. 26, 2019) ("[P]laintiff in his complaint appears to allege [a] claim[] pursuant to § 1983 for . . . malicious arrest (which the court considers a claim for false arrest) . . . ."); Mills v. Mabile, No. CIV. A. 95-2694, 1996 WL 39420, at *1, *3 (E.D. La. Jan. 30, 1996) (only recognizing a cause of action for false arrest where plaintiff asserted claim for "false and malicious arrest" pursuant to Section 1983).  Thus, Defendants are entitled to judgment as the Court's analysis herein also applies to Plaintiff's Section 1983 malicious arrest claim.

### C. Section 1983: False Imprisonment

Plaintiff also asserts a Section 1983 claim for false imprisonment. (Doc. 12, pp. 16–17.) However, false arrest and false imprisonment are overlapping causes of action under federal law; "the former is a species of the latter." Wallace, 549 U.S. at 388. Indeed, like a false arrest claim, a plaintiff may not assert a claim for false imprisonment based on detention pursuant to legal process. Id. at 389 ("Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process . . . ."); Cloy v. Boutwell, No. CIV.A. 12-00718-KD-N, 2015 WL 225388, at *6 (S.D. Ala. Jan. 16, 2015) ("[W]here, as here, a plaintiff is arrested pursuant to a warrant, the plaintiff's § 1983 claim is one for malicious prosecution rather than false arrest or false imprisonment.") As such, Plaintiff does not have a viable Section 1983 false imprisonment claim, and the Court **GRANTS** Defendants' Motion on this claim.

### D. Section 1983: Supervisory and Municipal Liability

Finally, Plaintiff asserts claims against Defendants Doering and Glynn County stemming from the alleged unconstitutional acts of Sasser. (Doc. 12, pp. 38–49.) While municipalities and supervisors can be liable for constitutional violations committed by their employees or supervisees in certain situations, both claims require an underlying constitutional violation. See Beshers v. Harrison, 495 F.3d 1260, 1264 n.7 (11th Cir. 2007) ("We need not address the Appellant's claims of municipal or supervisory liability since we conclude no constitutional violation occurred."); see also Winters v. Ranum, 730 F. App'x 826, 828 (11th Cir. 2018) (per curiam) ("[T]here can be no municipal liability under § 1983 absent a constitutional violation."); Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999) (claims for supervisory liability fail without underlying constitutional violation). As laid out above, the Court has concluded that most of Plaintiff's Section 1983 claims

fail for Plaintiff's inability to establish a constitutional violation. To be sure, the Court disposed of Plaintiff's Fourth Amendment search claim on grounds of qualified immunity without deciding whether the officers' actions were violative of the Constitution. However, even assuming any underlying violations occurred, Doering and Glynn County are nonetheless entitled to judgment in their favor.

### (1) Defendant Doering

Liability under Section 1983 cannot attach based merely on a defendant's supervisory status. Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009). A supervisor may be liable only where a plaintiff can show:

> (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct."

Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) (per curiam) (citing West v. Tillman, 496 F.3d 1321, 1328 (11th Cir.2007)); see also Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003); Belcher v. City of Foley, 30 F.3d 1390, 1396-97 (11th Cir. 1994) (while "[s]upervisory officials are not liable under section 1983 on the basis of *respondeat superior* or various liability[,] [t]hey may . . . be liable . . . when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation") (citations and internal quotation marks omitted).

In the case at hand, Plaintiff has failed to demonstrate that any of these avenues provide a basis to hold Doering liable for the alleged violations of her constitutional rights. Plaintiff alleges that Doering failed to act despite knowledge that Sasser had a "history of widespread abuse" and that "this failure led to the unlawful [acts]" giving rise to this action. (Doc. 83, p. 13.) In her

Amended Response, Plaintiff relies on several hundred pages of documents that demonstrate that Sasser had a history of inappropriate, violent conduct, both with fellow officers and civilians. (Docs. 83–83-7.)  However, Plaintiff has not presented any evidence of past conduct by Sasser related to executing warrants or obtaining warrants without probable cause.  Moreover, even if Plaintiff had presented any such instances, she has not demonstrated conduct that qualifies as "widespread abuse" such that it would put Doering on notice of any alleged deprivations.  Barr, 437 F. App'x at 875.  Finally, Plaintiff has not argued—much less presented evidence to show— that Doering personally participated in any alleged deprivation of her constitutional rights, that Doering enacted or maintained a custom or policy that resulted in the violation of Plaintiff's constitutional rights, or that he directed and/or knowingly failed to prevent any unlawful actions as to Plaintiff.  Accordingly, even when viewing the record in the light most favorable to her, Plaintiff has failed to meet the "extremely rigorous" evidentiary burden of proving supervisory liability in regard to any of her Section 1983 claims, and Doering is entitled to judgment in his favor.  See Cottone, 326 F.3d at 1360.

### (2)    Defendant Glynn County

Like supervisors, municipalities are not subject to Section 1983 liability under the theory of *respondeat superior*.  See Monell v. Dep't of Social Servs., 436 U.S. 658, 691–95 (1978). Rather, "[i]t is only when the execution of the government's policy or custom . . . inflicts the injury in question that the municipality may be held liable."  City of Canton v. Harris, 489 U.S. 378, 385 (1989) (citation omitted).  Thus, "[a] plaintiff seeking to hold a municipality liable under § 1983 must identify a municipal policy or custom that caused [her] injury," and show that the practice was "a persistent and wide-spread practice."  McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (citation and internal quotation marks omitted).  To that end, a municipality cannot be held

liable where a plaintiff cannot "point to any other incidents involving similar facts." Mercado v. City of Orlando, 407 F.3d 1152, 1162 (11th Cir. 2005). Here, Plaintiff does not point to *any* incidents related to searches, search warrants, arrests, or arrest warrants, much less any incidents with similar facts. See id. As such, Plaintiff has not established Glynn County's liability and the Court **GRANTS** Defendants' Motion on this issue.

### E. Official Capacity Claims

In her Complaint, Plaintiff also asserted claims against Defendants Thomas, Sasser, Hollingsworth, and Doering in their official capacities. (Doc. 12, p. 1.) However, "where a plaintiff brings an action against a public official in his official capacity, the suit is against the office that official represents, and not the official himself." Welch v. Laney, 57 F.3d 1004, 1009 (11th Cir. 1995); see Monell v. Dep't of Social Servs., 436 U.S. 658, 699 n.55 (1978) (official capacity suits "generally represent another way of pleading an action against an entity of which an officer is an agent."). Thus, the claims against Thomas and Sasser, Hollingsworth, and Doering are properly construed as claims against the Brunswick Police Department and the Glynn County Police Department, respectively. See Davis v. Davis, 551 F. App'x 991, 995 (11th Cir. 2014) (per curiam) (action against deputy sheriffs against the Sheriff's Department, not the officers themselves).

As the Eleventh Circuit has observed, "[s]heriff's departments and police departments are not usually considered legal entities subject to suit[.]" Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992). The "capacity to sue or be sued shall be determined by the law of the state in which the district court is held . . . ." Fed. R. Civ. P. 17(b). Looking to Georgia law, the Georgia Supreme Court has explained that Georgia "recognizes only three classes as legal entities, namely: (1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the

law recognizes as being capable to sue." Ga. Insurers Insolvency Pool v. Elbert Cty., 258 Ga. 317, 368 S.E.2d 500, 502 (1988) (quotation omitted). Cases addressing this issue have concluded that, under Georgia law, sheriff's and police departments do not qualify as an "entity" under any of these classes. See Lovelace v. Dekalb Cent. Prob., 144 F. App'x 793, 795 (11th Cir. 2005) (per curiam) (applying Georgia law and affirming dismissal of claims against local police department); Northrup v. City of Brunswick, Georgia, No. 217-CV-126, 2018 WL 715439, at *2 (S.D. Ga. Feb. 5, 2018) (finding Glynn County Police Department and Brunswick Police Department not legal entities subject to suit under Georgia law). Thus, Plaintiff's claims against the officers in their official capacities fail as a matter of law.

However, even if Plaintiff could assert these claims, Defendants would still be entitled to judgment in their favor. As noted above, municipalities and municipal entities can only be liable where a plaintiff shows the entity in question had custom or policy that caused a constitutional violation. See McDowell, 392 F.3d at 1289. Here, the record is devoid of any evidence to show that either the Glynn County or Brunswick Police Departments had any policies or practices that caused a violation of Plaintiff's constitutional rights, let alone a policy or practice that was "persistent and wide-spread." Id. Accordingly, Plaintiff cannot assert her official-capacity claims against Thomas, Sasser, Hollingsworth, and Doering, and the Court **GRANTS** Defendants' Motion on these claims.

## F. Attorney's Fees

Plaintiff also requests attorney's fees and expenses of litigation under 42 U.S.C. § 1988. (Doc. 12, pp. 39–40.) A claim for attorney's fees under federal law requires a viable underlying claim. See 42 U.S.C. § 1988 (providing that the court may allow "the prevailing party, other than the United States, a reasonable attorney's fee"). Because none of her claims survive summary

judgment, Plaintiff's claims for attorney's fees also fail.  Accordingly, the Court **GRANTS** summary judgment in favor of Defendants on this claim.

## II.     State Law Claims[12]

### A.     Malicious Prosecution & False Arrest

Plaintiff alleges that Defendants Thomas, Sasser, and Hollingsworth are liable for false arrest and malicious prosecution in violation of state law.  (Doc. 12, pp. 14–15, 27–28.)  Under

---

[12] Defendants move for summary judgment as to all Plaintiff's claims that are asserted pursuant to Georgia law.  (Doc. 62-1, pp. 25–31.)  "[I]n any civil action of which the district courts have original jurisdiction," district courts also have supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]"  28 U.S.C. § 1367(a).  "The dismissal of [Plaintiff's] underlying federal question claim does not deprive the court of supplemental jurisdiction over the remaining state law claims."  Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997).  Instead, pursuant to Section 1367(c), "the Court has the discretion to decline to exercise supplemental jurisdiction over non-diverse state law claims, where the court has dismissed all claims over which it had original jurisdiction, but the court is not required to dismiss the case."  Id.  "Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction."  Id. at 1353.  While the Court has the discretion to retain jurisdiction over state law claims after dismissing federal claims, the law cautions against doing so.  Mergens v. Dreyfoos, 166 F.3d 1114, 1119 (11th Cir. 1999) (in its discretion the district court may dismiss State law claims after dismissing federal claims; "[m]ore specifically . . . if the federal claims are dismissed prior to trial, [United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)], strongly encourages or even requires dismissal of state claims") (quotes and citation omitted); accord Granite State Outdoor Advertising, Inc. v. Cobb Cty., Ga., 193 Fed. Appx. 900, 907 (11th Cir. 2006).  However, in the case at hand, considerations of judicial economy, convenience, and fairness compel the Court to retain jurisdiction over Plaintiff's state law claims and to rule upon Defendants' Motion as to those claims.  The parties have litigated this action in this Court for over two years and have engaged in extensive discovery and briefing.  Dismissing Plaintiff's state law claims without prejudice would require the parties to spend additional time and expense relitigating the same factual and legal issues in state court that they have already litigated in this Court and, in order to avoid running afoul of the statute of limitations, Plaintiff would have to refile her state law claims in a tight timeframe.  Further, Plaintiff's state and federal law claims rely on the same set of facts and involve many of the same principles of law.  Moreover, the legal analysis of Plaintiff's state law claims is straightforward and does not involve any novel questions of state law.  Thus, any considerations of comity are minimal at most.  The Court also notes that Plaintiff does not address or reference any state law claims in her Amended Response.  (See Doc. 83.)  The Eleventh Circuit has held in several unpublished cases that a plaintiff may abandon claims on summary judgment by failing to address them in his response brief.  See Gailes v. Margeno Cnty. Sheriff's Dep't, 916 F. Supp. 2d 1238, 1241-42, 1241 n.6 (S.D. Ala. 2013) (collecting cases).  However, the court has not gone so far in a published decision. See Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 971 n.36 (11th Cir. 2008) (alternatively holding in a footnote that plaintiff abandoned a discrimination claim on summary judgment and that there was an undisputed nondiscriminatory reason for supervisor's decision).  For the foregoing reasons, the Court will address the substance of Plaintiff's state law claims.

Georgia law, a claim for false arrest under O.C.G.A. § 51-7-1 alleges harm from a detention effectuated "under process of law," while a claim for malicious prosecution under O.C.G.A. § 51-7-40 alleges harm from "detention with judicial process followed by prosecution."[13] Ferrell v. Mikula, 672 S.E.2d 7, 13 (Ga. Ct. App. 2008). "The distinction is important because '[m]alicious prosecution and [false] arrest are mutually exclusive; if one right of action exists, the other does not." Stephens v. Zimmerman, 774 S.E.2d 811, 815 (2015) (quoting Perry v. Brooks, 332, S.E.2d 375, 377 (Ga. Ct. App. 2008). Where a plaintiff is arrested "pursuant to a warrant" and the "action is carried on to a prosecution, an action for malicious prosecution is the *exclusive remedy*, and an action for [false] arrest will not lie." Id. (alternation in original) (citation omitted). Here, Plaintiff was arrested pursuant to several arrest warrants and subsequently had a suppression hearing before the Glynn County Superior Court. (See Doc. 71-4; doc. 62-6, pp. 2–5; doc. 62-8.) Thus, malicious prosecution constitutes her "exclusive remedy," and the Court **GRANTS** Defendants' Motion as to Plaintiff's false arrest claim. See Stephens, 774 S.E.2d at 815; O.C.G.A. § 51-7-42 ("[A]n inquiry before a committing court or magistrate shall amount to a prosecution.")

"A claim for malicious prosecution under . . . Georgia law requires showing[:] '(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused.'" Green v. City of Lawrenceville, 745 F. App'x 881, 883 (11th Cir. 2018) (per curiam) (quoting Kjellsen v. Mills, 517 F.3d 1232, 1237 (11th Cir. 2008)); see Condon v. Vickery, 606 S.E.2d 336, 339 (Ga. Ct. App. 2004) (affirming grant of summary judgment where plaintiff

---

[13] In her Amended Complaint, Plaintiff purports to bring a claim for malicious arrest in addition to one for false arrest. (Doc. 12, pp. 14–15, 22–23.) However, under Georgia law, these causes of action are one in the same—meaning Plaintiff asserts identical claims in two separate counts. See Ferrell v. Mikula, 672 S.E.2d 7, 13 (Ga. Ct. App. 2008) (citing O.C.G.A. § 51-7-1, the Georgia code section titled "Right of action for false arrest," and referring to a cause of action thereunder as "false/malicious arrest"). Accordingly, the Court will address the claims in tandem.

could not prove one element of malicious prosecution claim). In their Motion, Defendants argue that Plaintiff's malicious prosecution claim fails because she cannot show the officers lacked probable cause or acted with malice. (Doc. 62-1, p. 29.) The Court agrees.

First, the undisputed facts show that Sasser had probable cause to obtain the arrest warrants, and that Thomas, Sasser, and Hollingsworth had probable cause to arrest Plaintiff based on the bench warrants. To establish probable cause, it is not necessary for a defendant to prove that the plaintiff was actually guilty of the at-issue offense; rather, he must show that an inference of guilt was reasonable under the circumstances. See Achor Ctr. v. Holmes, 465 S.E.2d 451, 453 (Ga. Ct. App. 1995). Here, it is undisputed that Sasser obtained the initial arrest warrants for hindering the apprehension of a criminal and obstruction of an officer after Thomas and Sasser located Brown in Plaintiff's residence. (Doc. 62-9, p. 5.) These facts and circumstances—the discovery of Brown at 508 Mack Street shortly after Plaintiff's express denial of his presence in her home—are such that they would "excite the *belief* in a reasonable mind that plaintiff was guilty of the crime for which he was arrested." Smith v. Tr. Co. Bank, 450 S.E.2d 866, 869 (Ga. Ct. App. 1994) (emphasis original).

Moreover, it is undisputed that a grand jury indicted Plaintiff on two charges of making false statements to law enforcement officers, that a Superior Court judge issued bench warrants for Plaintiff's arrest based on these indictments, and that Thomas, Sasser, and Hollingsworth relied on these warrants to effectuate Plaintiff's second arrest. (Doc. 62-9, p. 5.) A "[grand jury] indictment creates a presumption of probable cause that may be rebutted by plaintiff . . . by setting forth specific facts that indicate a lack of probable cause . . . ." Jackson v. Kmart Corp., 851 F. Supp. 469, 473 (M.D. Ga. 1994) (applying Georgia law); Fleming v. U-Haul Co., 541 S.E.2d 75, 78 (Ga. Ct. App. 2000) (defendant "not relieved [from liability] if he conceals facts, nor if he

distorts facts, nor if he is negligent in ascertaining facts"). Plaintiff has not responded to Defendant's Motion, much less adduce facts to make such a showing. There is no evidence that the officers had any reason to doubt the validity of the bench warrants or sought to enforce them in bad faith. Indeed, as noted above, Brown's presence in Plaintiff's home directly contradicted her statement denying his presence, and Plaintiff has not pointed to evidence indicating that it was unreasonable for Thomas, Sasser or Hollingsworth to believe she had been untruthful.

Even assuming, *arguendo*, that Plaintiff's arrests and prosecution lacked probable cause, there is no evidence demonstrating malice on behalf of the officers. Under Georgia law, malice is defined as "personal spite or . . . a general disregard for the right consideration of mankind, directed by chance against the individual injured." O.C.G.A. § 51-7-2. There are no facts in the record from which a jury could infer that the officers were motivated by "personal spite" in applying for and/or executing the arrest warrants. See Stanford v. City of Manchester, 539 S.E.2d 845, 848 (Ga. Ct. App. 2000) (summary judgment proper where record lacked evidence that investigation and prosecution initiated by anything other than information obtained in good faith).

As Plaintiff has failed to put forth sufficient evidence to establish that her prosecutions were initiated without probable cause or with malice, she cannot prove essential elements of her malicious prosecution claim.[14] "The elements of malicious prosecution are listed in the conjunctive; therefore, if [a p]laintiff is unable to prove any of the four elements, his claim necessarily fails." Holland v. City of Auburn, 657 F. App'x 899, 903 (11th Cir. 2016) (per curiam); see also Condon 606 S.E.2d at 339 (affirming grant of summary judgment where plaintiff could not prove one element of malicious prosecution claim). The undisputed facts establish that

---

[14] While false arrest and malicious prosecution are distinct causes of action, both claims require a plaintiff to prove "malice and the absence of probable cause." Fleming v. U-Haul Co., 541 S.E.2d 75, 77 (Ga. Ct. App. 2000). Thus, even if Plaintiff could assert her false arrest claim, it too would fail.

Plaintiff cannot prove two of the four elements as to Defendants Thomas, Sasser, and Hollingsworth. Thus, the Court **GRANTS** Defendants' Motion on this claim.

### B. False Imprisonment

Plaintiff also alleges Defendants Thomas, Sasser, and Hollingsworth are liable for false imprisonment in violation of Georgia law. (Doc. 12, pp. 18–19.) In Georgia, "[a]n action for false imprisonment [arises] under O.C.G.A. § 51-7-20 [and] cannot be maintained where the arrest was carried out pursuant to a valid warrant, no matter how corrupt the motives of the prosecutor or how unfounded the imprisonment may be." Fleming, 541 S.E.2d 75, 77 (Ga. Ct. App. 2000); see McClendon v. Harper, 826 S.E.2d 412, 418 (Ga. Ct. App. 2019) (upholding grant of summary judgment on false imprisonment claim where plaintiff was not subject to warrantless arrest). Here, it is undisputed that Plaintiff's arrests and subsequent detentions were pursuant to signed arrest warrants. (Doc. 62-9, p. 5.) As such, Plaintiff cannot assert a claim for false imprisonment and Defendants are entitled to judgment in their favor. Thus, the Court **GRANTS** Defendants' Motion on this claim.

### C. Intentional Infliction of Emotional Distress

Additionally, Plaintiff asserts a claim for intentional infliction of emotional distress, arguing that Defendants Thomas, Sasser, and Hollingsworth "acted recklessly in intentionally searching, detaining, arresting, and[/or] prosecuting [her] without any basis in law or fact," and that Defendant Doering "acted recklessly in hiring and retaining Defendant Sasser." (Doc. 12, p. 30.) "[T]o prevail on a claim for intentional infliction of emotional distress, [a plaintiff] must present evidence demonstrating that the alleged conduct was: (1) intentional or reckless; (2) extreme and outrageous; and (3) the cause of severe emotional distress." Wilcher v. Confederate Packaging, Inc., 651 S.E.2d 790, 792 (Ga. Ct. App. 2007). Here, Defendants dispute the second

element and argue the at-issue conduct "falls far outside the realm of conduct required." (Doc. 62-1, p. 30.) The Court agrees.

"The rule of thumb in determining whether the conduct complained of was sufficiently extreme and outrageous is whether the recitation of the facts to an average member of the community would [cause her to] exclaim 'Outrageous!'" Ups v. Moore, 519 S.E.2d 15, 17 (Ga. Ct. App. 1999). "Only where the distress inflicted is so severe that no reasonable person could be expected to endure it does the law intervene." Everett v. Goodloe, 602 S.E.2d 284, 292 (Ga. Ct. App. 2004). The undisputed record before the Court is devoid of evidence tending to show conduct rising to this high threshold. Indeed, Plaintiff has not shown that any of Defendants' conduct was legally impermissible, let alone so unreasonable as to be considered "outrageous." See Desmond v. Troncalli Mitsubishi, 532 S.E.2d 463, 468 (Ga. Ct. App. 2000) (plaintiff could not rely on acts supported by probable cause to assert claim); cf. K-Mart Corp. v. Lovett, 525 S.E.2d 751, 755 (Ga. Ct. App. 1999) (summary judgment not proper where defendant signed affidavit containing false statements knowing it would lead to plaintiff's detention). Accordingly, the Court **GRANTS** Defendant's Motion as to Plaintiff's claim for intentional infliction of emotional distress.

### D.     Official Immunity

Defendants Thomas, Sasser, Hollingsworth, and Doering, also moved for summary judgment on the basis of official immunity as to each of Plaintiff's state law claims. (Doc. 56-2, p. 24.) In Georgia, the doctrine of official immunity "offers public officers and employees limited protection from suit in their personal capacity." Cameron v. Lang, 549 S.E.2d 341, 344 (Ga. 2001); see also Crosby v. Johnson, 779 S.E.2d 446, 450 (Ga. Ct. App. 2015) ("When a county official is sued in his individual capacity, the doctrine of official immunity . . . is implicated."). Under the doctrine, state officers and employees are "immune from individual liability for discretionary acts

undertaken in the course of their duties and performed without willfulness, malice, or corruption."

Reed v. DeKalb County, 589 S.E.2d 584, 586 (Ga. Ct. App. 2003).  Here, the parties do not dispute that each Defendant was acting within his discretionary authority.  (Doc. 56-2, p. 24; doc. 61, p. 25.)  As such, the burden shifts to Plaintiff to show that Defendants acted with actual malice.  See Reed, 589 S.E.2d at 589 (defendant entitled to summary judgment where plaintiff failed to offer evidence of actual malice).

In the context of official immunity, "actual malice" means "a deliberate intention to do wrong."  Adams v. Hazlewood, 520 S.E.2d 896, 898 (Ga. 2011).  "Actual malice requires more than harboring bad feelings about another.  [The] presence [of ill will] alone cannot pierce official immunity; rather, ill will must also be combined with the intent to do something wrongful or illegal."  Id.  Evidence that merely shows "an intent to do the act purportedly resulting in the claimed injury[]" does not suffice.  Marshall v. Browning, 712 S.E.2d 71, 74 (Ga. Ct. App. 2011).  Instead, the record must show a defendant's "intent to cause the harm suffered by the plaintiff[]."  Murphy v. Bajjani, 647 S.E.2d 54, 60 (Ga. 2007).  Here, Plaintiff has not responded to Defendant's Motion, let alone pointed to any evidence of actual malice.  Moreover, the record is devoid of evidence tending to show that any officer's actions were calculated to intentionally cause Plaintiff harm.  Regardless of any personal or negative feelings any Defendant may have harbored towards Plaintiff, she has not shown that any Defendant's actions surrounding the search of her residence or her arrests were done with the requisite intent.  See Greenway v. Northside Hosp., Inc., 763 S.E.2d 488, 489 (Ga. Ct. App. 2014) ("[E]vidence demonstrating frustration, irritation, and possibly even anger is not sufficient to penetrate official immunity.").  Accordingly, the Court finds that Defendants Thomas, Sasser, Hollingsworth, and Doering are entitled to official

immunity from Plaintiff's state law claims against them in their personal capacity and the Court **GRANTS** these Defendants summary judgment on all such claims for this additional reason.

### E. Claim against Defendant Glynn County

Plaintiff's final state law claim is against Defendant Glynn County, arguing the County is liable for Sasser's alleged unlawful behavior under a theory of *respondeat superior*. (Doc. 12, pp. 38–39.) In their Motion, Defendants contend that Glynn County is entitled to sovereign immunity. (Doc. 62, p. 26.) In Georgia, "sovereign immunity applies to municipalities, unless waived by the General Assembly or by the terms of the State Constitution itself." City of Albany v. Stanford, 815 S.E.2d 322, 325 (Ga. Ct. App. 2018). Thus, "[a] county may be liable for a county employee's negligence in performing an official function [only] to the extent the county has waived sovereign immunity." Russell v. Barrett, 673 S.E.2d 623, 628 (Ga. Ct. App. 2009). The question, then, is whether Glynn County has waived its immunity—a showing that "must be established by the party seeking to benefit from that waiver." Ratliff v. McDonald, 756 S.E.2d 569, 574. Here, Plaintiff failed to carry this burden; she did not address Defendants' assertion of sovereign immunity in her Amended Response or otherwise point to any constitutional provision or legislative enactment waiving sovereign immunity for her claim against Glynn County. "Because . . . there is no evidence that the county has waived its sovereign immunity, the grant of summary judgment on the respondeat superior claim [is] appropriate." Russell, 673 S.E.2d at 628; see Crosby v. Johnson, 779 S.E.2d 446, 450 (Ga. Ct. App. 2015) (dismissal proper where plaintiff failed to present argument or identify statutory waiver on issue of sovereign immunity). Accordingly, the Court **GRANTS** Defendants' Motion on Plaintiff's claim against Glynn County.[15]

---

[15] To the extent Plaintiff asserts state law claims against Defendants Thomas, Sasser, Hollingsworth, and Doering in their official capacities, these claims are also barred by sovereign immunity. (See Doc. 12, p. 1.) A claim against a police officer "in his official capacity is, in reality, a suit against a governmental

**CONCLUSION**

For the reasons set forth above, the Court **GRANTS** Defendants' Motion Summary Judgment, (doc. 62). The Court **DIRECTS** the Clerk of Court to enter the appropriate judgment of dismissal and to **CLOSE** this case.

**SO ORDERED**, this 16th day of January, 2020.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

entity and subject to a claim of sovereign immunity"—here, those entities are Glynn County and the City of Brunswick. Campbell v. Goode, 695 S.E.2d 44, 46 (Ga. Ct. App. 2010). As noted above, Plaintiff did not respond to Defendants' assertion of sovereign immunity for Glynn County and the record is devoid of any argument as to a waiver by the City of Brunswick. Thus, Plaintiff has failed to meet her burden and Defendants are entitled to judgment in their favor as to any state law claims against Thomas, Sasser, Hollingsworth, and Doering in their official capacities. See Anderson v. Cobb, S.E.2d 417, 419 (Ga. Ct. App. 2002) (affirming grant of sovereign immunity for claims of false arrest, false imprisonment, and malicious prosecution).